COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Humphreys and Millette
Argued at Chesapeake, Virginia


WILLIE ROBERT KILBY, JR.
                                                          OPINION BY
v.        Record No. 1524-07-1              JUDGE ROBERT J. HUMPHREYS
                                                          JULY 29, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
H. Vincent Conway, Jr., Judge

Stephanie S. Miller (Edward W. Webb; Office of the Public
Defender, on brief), for appellant.

Craig Stallard, Assistant Attorney General (Robert F. McDonnell,
Attorney General; Karri B. Atwood, Assistant Attorney General, on
brief), for appellee.


Willie Robert Kilby Jr. ("Kilby") appeals ten criminal convictions arising out of his

inappropriate sexual conduct towards his grandchildren.[1]  Kilby claims that the trial court erred

(1) by admitting certain hearsay testimony into evidence, (2) by allowing a witness to testify as

an expert, and (3) by allowing that witness to comment on the veracity of another witness.  For

the following reasons, we affirm the decision of the trial court.

I.  Background

"On appeal, we review the evidence in the light most favorable to the Commonwealth,

the prevailing party below, giving it the benefit of all reasonable inferences."  Pierce v.

_____

[1] Specifically, Kilby was convicted of three counts of aggravated sexual battery, in
violation of Code § 18.2-67.3, three counts of indecent liberties with a child, in violation of Code
§ 18.2-370.1, three counts of contributing to the delinquency of a minor, in violation of Code
§ 18.2-371, and one count of forcible sodomy, in violation of Code § 18.2-67.1.

Commonwealth, 50 Va. App. 609, 612, 652 S.E.2d 785, 787 (2007). So viewed, the evidence established the following.

Kilby is the grandfather of three minor children, M.D., D.A., and D.S. In August 2005, M.D., a male, was eleven years old, D.A., a female, was seven, and D.S., a female, was five. Between August 5, 2005 and December 10, 2005, Kilby sexually assaulted all three of the grandchildren.

On December 12, 2005, Detective John T. Johnson, III ("Detective Johnson") of the Newport News Police Department interviewed D.A. and D.S. as part of an investigation into alleged sexual abuse by their stepfather, Mike Perez. During the interview, and without solicitation by Detective Johnson, D.A. told Detective Johnson that Kilby had shown her and her siblings "dirty movies" and then did "the same thing" to them. In response to D.A.'s accusation, Detective Johnson opened an investigation of Kilby. At some point during the investigation, D.A. told Detective Johnson that Kilby had raped her. Specifically, she told Johnson that Kilby had "put his pee pee in [her] pee pee." Detective Johnson secured a search warrant for Kilby's apartment, where he discovered twenty-two pornographic videos. Among the tapes, Detective Johnson discovered several that depicted the type of sexual actions described by D.A.

On January 30, 2006, Kelly Bober ("Bober"), lead forensic investigator for Children's Hospital of the King's Daughters Child Abuse Program, conducted a forensic interview with each of the children. All three of the children described sexual abuse by Kilby.

On April 17, 2006, Detective Johnson interviewed D.A. again. During that interview, she told Detective Johnson that she did not remember Kilby ever having sexual intercourse with her.

A grand jury subsequently charged Kilby with three counts of aggravated sexual battery, in violation of Code § 18.2-67.3, three counts of indecent liberties with a child, in violation of Code § 18.2-370.1, three counts of contributing to the delinquency of a minor, in violation of

Code § 18.2-371, one count of forcible sodomy, in violation of Code § 18.2-67.1, and one count of rape, in violation of Code § 18.2-61.

At trial, the Commonwealth presented several witnesses, including Detective Johnson, Bober, and all three children. Detective Johnson testified first. He testified to allegations of sexual abuse made by D.A. during the December 12, 2005 interview. Kilby objected, stating,

> Your Honor, I'm going to object to this as evidence in chief. I don't mind him bringing it in as long as it's understood it's not evidence; it's hearsay, and the statement the child made outside of court is hearsay. I mean, if they want to bring it in for some other purpose, your Honor, as long as it's understood it can't be read as evidence against the defendant, I don't object.

The trial court allowed the testimony as part of the "process of the investigation." The trial court accepted a standing objection by Kilby on those grounds in regard to the children's out-of-court statements. Detective Johnson proceeded to testify about statements that D.A. made during the December 12, 2005 interview. He explained that D.A.'s accusations were the reason that he began to investigate Kilby. Detective Johnson did not testify to any statements made by D.S. or M.D. during the entire course of his investigation.

Following Detective Johnson's testimony, each of the three children testified in detail to sexual abuse by Kilby. On cross-examination, Kilby asked D.A. if she remembered Detective Johnson asking her, during the April 17, 2006 interview, whether Kilby had raped her. D.A. testified that she did. Kilby asked if she remembered telling Detective Johnson that she did not remember Kilby raping her. D.A. responded, "No, I never – I didn't say that."

The Commonwealth subsequently called Bober to testify "as an expert in forensic interviewing, child sexual abuse disclosure by children of sexual assault and recantation."[2] Bober testified that she is the lead forensic interviewer at Children's Hospital of the King's

---

[2] Bober was also qualified as an expert in recantation, but she did not testify regarding recantation in regard to any of the three children.

Daughters Child Abuse Program. She explained that, as a forensic interviewer, she interviews children that have allegedly been abused and children who have witnessed crimes. Her specialty is dealing with children who have been sexually abused. Those children make up about 95% of the children she interviews. Bober had worked as a forensic interviewer for nine years and prior to that had worked with the Chesapeake Health Department providing in-home services to at-risk families. Bober testified that she has a bachelor's degree in social work, and also explained that, although master's degrees are not offered in forensic interviewing, she has attended numerous forensic training programs across the country.[3] Bober testified further that she had previously qualified as an expert in child sexual abuse cases in Newport News, Portsmouth, Norfolk, the Coast Guard, the Army, and the Navy. Specifically, she had been qualified in the areas of forensic interviewing, "the process of disclosure," and "recantation and delayed disclosure."

Kilby objected to the use of Bober as an expert witness. He stated: "I object, your Honor. I think this calls for specialization beyond – some sort of, you know, degree and education in the area, and I object to her qualifications." The trial court overruled Kilby's objection and allowed Bober to testify.

During Bober's testimony, Kilby made two additional objections. Kilby first objected when the prosecutor asked Bober about statements D.S. had made during her interview. Kilby objected, arguing again that the children's out-of-court statements are hearsay. The trial court overruled Kilby's objection, stating that D.S.'s statements were admissible as the basis of Bober's opinion. The prosecutor followed up by arguing that the testimony was also admissible as a prior consistent statement. The trial court said "Correct." Kilby did not object.

---

[3] Specifically, she testified that she has attended training through the First Witness Program in Duluth, Minnesota, Finding Words in Windona, Minnesota, and the American Professional Society of Abused Children. She has also received "advanced training" through the National Advocacy Center in Huntsville, Alabama and has attended "many, many, many" national symposiums on forensic interviewing.

Kilby next objected during Bober's testimony regarding delayed disclosure. The objection took place in the following context:

> Bober: [Child sexual abuse victims] use different defense mechanisms to protect themselves at that stage of disclosure, and they only either give a partial statement, or they minimize their statement.
>
> [Prosecutor]: Did you feel that this is what was going on with [M.D.] on January 30?
>
> [Defense]: I object to the conclusion, your Honor.
>
> Court: You may wish to rephrase that.
>
> [Prosecutor]: Based upon your training and experience with children that have been alleged to have had sexual abuse, do you feel that [M.D.] was in a state of delayed disclosure at the point you talked to him?
>
> Bober: I would say that he was giving a tentative disclosure related to some of the language that he used, yes.

Kilby made no objection to the prosecutor's second question or Bober's response.

In his case-in-chief, Kilby called several witnesses, including Detective Johnson. Kilby questioned Detective Johnson about statements D.A. made to him during the April 17, 2006 interview. Detective Johnson testified that D.A. told him that she could not remember Kilby ever having sexual intercourse with her.

The trial court subsequently convicted Kilby of all of the charges except the rape charge. Kilby now appeals that decision.

## II. Analysis

Kilby raises several issues on appeal. First, he claims that the trial court erred by allowing Detective Johnson and Bober to testify regarding out-of-court statements made by the three children. Next, he claims that the trial court erred by allowing Bober to testify as an expert. Finally, he argues that the trial court erred by allowing Bober to give an opinion "bearing on" the

veracity of M.D.  For the following reasons, the trial court did not err in admitting Detective

Johnson's and Bober's testimony regarding out-of-court statements made by the children and

properly accepted Bober as an expert.  Under Rule 5A:18, Kilby's claim that Bober improperly

commented on M.D.'s veracity is waived since no such objection was made to the trial court.

### A.  The Children's Out-Of-Court Statements

Both Bober and Detective Johnson testified regarding interviews that they had conducted

with the children.  Detective Johnson testified about statements made by D.A., and Bober

testified about statements made by all three children.  Kilby claims that their testimony regarding

the children's statements was inadmissible because the children's statements were hearsay.

### 1.  Detective Johnson's Testimony Regarding D.A.'s Statements

Initially, the Commonwealth claims that Kilby waived his objection to Detective

Johnson's testimony because he later called Detective Johnson as a witness in his case-in-chief

and elicited testimony regarding statements made by D.A. during his investigation.

> "It is a well settled and obviously sound general rule that an
> objection to evidence cannot be availed of by a party who has, at
> some other time during the trial, voluntarily elicited the same
> evidence, or has permitted it to be brought out by his adversary
> without objection.  The rule finds its most frequent application in
> cases where the party making the objection afterwards introduces
> the same evidence . . . ."

Burns v. Board of Supervisors, 227 Va. 354, 363, 315 S.E.2d 856, 862 (1984) (quoting Whitten

v. McClelland, 137 Va. 726, 741, 120 S.E. 146, 150 (1923)) (emphasis omitted).  "'[W]here an

accused unsuccessfully objects to evidence which he considers improper and then on his own

behalf introduces evidence of the same character, he thereby waives his objection, and we cannot

reverse for the alleged error.'"  Hubbard v. Commonwealth, 243 Va. 1, 9, 413 S.E.2d 875, 879

(1992) (quoting Saunders v. Commonwealth, 211 Va. 399, 401, 177 S.E.2d 637, 638 (1970)).

However, "before [the rule] will be applied, 'there must be some reasonable and just foundation

for holding that there was in fact a waiver.'" Brooks v. Bankson, 248 Va. 197, 207, 445 S.E.2d 473, 478-79 (1994) (quoting Whitten, 137 Va. at 742, 120 S.E.at 150).

Kilby objected to Detective Johnson's testimony, claiming that D.A.'s statements were hearsay and could not be considered for their truth. Kilby later called Detective Johnson as his own witness and elicited statements by D.A. in order to show proof of a prior inconsistent statement made by D.A. D.A. had testified that she had never told Detective Johnson that she could not remember Kilby ever raping her. Kilby called Detective Johnson to testify regarding the April 17, 2006 interview, in which D.A. told him that she did not remember Kilby raping her, directly contradicting D.A.'s earlier testimony. "A prior inconsistent statement is received in evidence exclusively to attack the credibility of the witness who has given different accounts of the facts at different times. The prior statement *is not evidence of the truth of the earlier account* . . . ." Royal v. Commonwealth, 234 Va. 403, 405, 362 S.E.2d 323, 324 (1987) (emphasis added). By offering D.A.'s statements as a prior inconsistent statement, Kilby did not offer the statement for its truth. Because Kilby did not offer D.A.'s out-of-court statements for their truth, he did not contradict his earlier position that the D.A.'s out-of-court statements could not be considered for their truth. Thus, there is no "'reasonable and just foundation'" for holding that he waived his earlier objection. Brooks , 248 Va. at 207, 445 S.E.2d at 478-79 (quoting Whitten, 137 Va. at 742, 120 S.E. at 150).

Although Kilby did not waive his objection to Detective Johnson's testimony, we nevertheless find it without merit. At trial, Kilby explicitly stated that he did not object to the admission of D.A.'s statements. Instead, he objected only to the statements being "read as evidence against the defendant." On appeal, he claims that the following statement by the trial court proves that it considered D.A.'s statements to Detective Johnson as evidence against Kilby:

> [H]aving listened to [D.A.] and, more importantly, having listened
> to [M.D.] and [D.S.], it seems to me looking at their testimony and

their responses, what they said to Detective Johnson, what they said to CHKD, notwithstanding the fact that various parts of this puzzle came forward at different times, not at one time, it seems to me beyond a reasonable doubt in considering that these four charges with reference to [D.A.] have been proven to the court beyond a reasonable doubt.

There is nothing in that statement that mandates the conclusion that the trial court improperly considered D.A.'s statements to Detective Johnson as evidence against Kilby. "On a daily basis, trial courts hear evidence admissible for one purpose yet inadmissible for another purpose." Vanhook v. Commonwealth, 40 Va. App. 130, 135, 578 S.E.2d 71, 73 (2003). "Nonetheless, the courts consider the evidence only in its permissible context." Id. "[I]n a bench trial, the trial judge is presumed to disregard prejudicial or inadmissible evidence, and this presumption will control in the absence of clear evidence to the contrary." Hall v. Commonwealth, 14 Va. App. 892, 902, 421 S.E.2d 455, 462 (1992) (en banc) (citation omitted). Based on the trial court's brief reference to D.A.'s statements to Detective Johnson, it is impossible to know for what purpose the court considered those statements. Kilby claims that the court considered D.A.'s statements for their truth. However, it is just as likely that the court was referring to the prior inconsistent statement that Kilby offered as evidence on his behalf.[4] Under our standard of review, we cannot speculate as to the meaning of the trial court's statement. It is up to Kilby to provide "clear evidence" that the court considered the evidence for an improper purpose. He has failed to do so.

2.  Bober's Testimony Regarding the Children's Statements

Kilby claims that the trial court erred in admitting Bober's testimony about statements the children made to her, on the same grounds that he objected to Detective Johnson's testimony.

---

[4] This explanation is especially likely considering that the court acquitted Kilby of the charge that he raped D.A.

- 8 -

However, he failed to preserve that objection for appeal and there is no clear evidence that the trial court considered Bober's testimony improperly.

After the trial court overruled Kilby's general hearsay objection, the prosecutor followed up by arguing that the testimony was admissible as a prior consistent statement. The trial court said "Correct." Kilby did not object. In his brief on appeal, Kilby admitted that the Commonwealth's claim that the statements were admissible as prior consistent statements was an "independent ground" for the admissibility of his statements. Kilby failed to object to the court's admission of that statement on the independent ground. Under Rule 5A:18, "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling." By failing to object to the trial court's ruling, Kilby waived his claim on appeal.

Kilby also claims that the trial court erred by considering the children's statements, testified to by Bober, for their truth. Like inconsistent statements, consistent statements are admitted, "not for the truth of the content of the statement, but, upon the issue of credibility, to show that the statements were made." Charles E. Friend, The Law of Evidence in Virginia § 18-3, at 730 (6th ed. 2003). Kilby claims that the trial court's reference, during its ruling, to "what [the children] said to CHKD," proves that the court considered Bober's testimony for an improper purpose. However, as previously noted, it is just as likely that the trial court relied on Bober's statements for a proper purpose – to corroborate the children's testimony. There is no clear evidence to prove that the trial court used the statements for an improper purpose. Thus, we cannot say that the trial court erred.

## B. Bober's Qualifications as an Expert

Kilby next claims that Bober was not qualified to testify as an expert on the issues of delayed disclosure and recantation in child sexual abuse victims.[5]  Initially, we note that Bober ultimately did not testify regarding recantation.  Thus, any error the trial court might have made by admitting her as an expert in recantation would be harmless, and we need not address that claim.  For the following reasons, we hold that the trial court did not abuse its discretion by admitting Bober as an expert on delayed disclosure.

"The admission of expert testimony is committed to the sound discretion of the trial judge, and we will reverse a trial court's decision only where that court has abused its discretion."  Brown v. Corbin, 244 Va. 528, 531, 423 S.E.2d 176, 178 (1992).

> Generally, to qualify as an expert the witness needs only to have a degree of knowledge of a subject matter beyond that of persons of common intelligence and ordinary experience so that the witness' opinion will have value in assisting the trier of fact in understanding the evidence or determining a fact in issue.  An expert witness may acquire the requisite knowledge of a subject matter through experience and observation in a variety of ways, including participation in a vocation, without formal training or education.  Whether to permit a witness to qualify as an expert on a given subject matter is an issue submitted to the discretion of the trial court, and on appeal we will not reverse the trial court's ruling

_____

[5] At oral argument, Kilby argued for the first time that Bober's testimony was also improper because delayed disclosure is not a proven or recognized scientific principle.  See Shooltz v. Shooltz, 27 Va. App. 264, 274, 498 S.E.2d 437, 442 (1998) ("When a litigant claims that a particular scientific, technical or other specialized theory or technique is valid, there must be some basis for determining the validity of the proffered theory or technique.").  However, Kilby's only objection at trial was an objection to Bober's general qualifications as an expert.  Specifically, Kilby stated, "I object, your Honor.  I think this calls for specialization beyond – some sort of, you know, degree and education in the area, and I object to her qualifications."  Kilby did *not* claim that delayed disclosure is not a valid scientific theory.  On appeal, we address only those objections made to the trial court.  See Rule 5A:18.  By failing to object on those grounds at trial, Kilby failed to preserve the argument for appeal.  Therefore, we do not address whether delayed disclosure is a sufficiently proven scientific theory, and, thus, a proper basis of expert testimony.

> in this regard unless it plainly appears that the witness was not qualified.

Conley v. Commonwealth, 273 Va. 554, 560, 643 S.E.2d 131, 134 (2007) (citations omitted).

Kilby argues that our decision in Davison v. Commonwealth, 18 Va. App. 496, 445 S.E.2d 683 (1994), mandates that Bober was unqualified to testify regarding delayed disclosure. In Davison, we held that a witness was not qualified to testify as an expert on the issue of recantation by child victims of sexual abuse. Id. at 504, 445 S.E.2d at 687. We held that, because the witness' only qualifications were "degrees in psychology and social work and an acquaintance with a single article" on recantation, she was not qualified to testify as an expert on the issue. Id.

Here, Bober was much more qualified than the witness in Davison. Bober testified that, in addition to her degree in social work, she is the lead forensic interviewer at Children's Hospital of the King's Daughters Child Abuse Program. She has worked as a forensic interviewer for nine years, and her specialty is dealing with children who have been sexually abused, who make up about 95% of the children she interviews. She testified that she has attended numerous forensic training programs across the country related to delayed disclosure. Bober testified further that she had previously qualified as an expert, in six different jurisdictions, in the areas of forensic interviewing, "the process of disclosure," and "recantation and delayed disclosure." Bober is much more qualified than the witness in Davison, and clearly has "a degree of knowledge of a subject matter beyond that of persons of common intelligence and ordinary experience." Conley, 273 Va. at 560, 643 S.E.2d at 134. The trial court did not abuse its discretion by allowing her to testify as an expert.

## C. Bober's Testimony

Kilby also claims that Bober impermissibly commented on M.D.'s veracity during her

testimony. Kilby's objection arose in the following context:

| | |
|---|---|
| Bober: | [Child sexual abuse victims] use different defense mechanisms to protect themselves at that stage of disclosure, and they only either give a partial statement, or they minimize their statement. |
| [Prosecutor]: | Did you feel that this is what was going on with [M.D.] on January 30? |
| [Defense]: | I object to the conclusion, your Honor. |
| Court: | You may wish to rephrase that. |
| [Prosecutor]: | Based upon your training and experience with children that have been alleged to have had sexual abuse, do you feel that [M.D.] was in a state of delayed disclosure at the point you talked to him? |
| Bober: | I would say that he was giving a tentative disclosure related to some of the language that he used, yes. |

Kilby made no objection to the prosecutor's second question or Bober's response.

Kilby failed to preserve this issue for appeal. By declining to object to the rephrased

question, Kilby failed to preserve any potential error for appeal. It is apparent from the record

that the trial court essentially sustained Kilby's objection by asking the prosecutor to rephrase the

question. If Kilby found the second question objectionable, it was his duty to alert the trial court

of the potential error. In order for us to review the rephrased question and subsequent answer on

appeal, Kilby was required to object to the rephrased question. Because he failed to do so, he

waived his right to have us consider the issue on appeal. See Rule 5A:18.

## III. Conclusion

For the foregoing reasons, we hold that the trial court did not err in its admission or

consideration of the children's statements testified to by Bober and Detective Johnson. The

court also did not err by allowing Bober to testify as an expert.  Kilby's claim that Bober improperly commented on M.D.'s veracity is waived.  Therefore, we affirm the decision of the trial court.

<u>Affirmed.</u>